UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 2:07-CR-90 |
| V. ) | District Judge Greer |
| ) | Magistrate Judge Inman |
| JEFF MCCABE ) | |

## **REPORT AND RECOMMENDATION**

Defendant has filed a motion to suppress "fruits of an unconstitutional search." (Doc. 133). This motion was referred to the magistrate judge pursuant to the standing order of this Court and 28 U.S.C. § 636. An evidentiary hearing was held on August 1, 2008.

The facts are as follows:

Larry Dobie Pruitt, a/k/a "Bear," owned and operated "Bear's Bar" in Cocke County, Tennessee. It was a "bar" in name only; in reality it was a modern-day opium den, although the prevalent drug was cocaine. It served as the headquarters for Mr. Pruitt's extensive cocaine-trafficking business, and various individuals, including defen-dant and his co-defendants, distributed and sold cocaine on Bear Pruitt's behalf out of Bear's Bar.[1] In addition, Bear Pruitt allowed various individuals not only to purchase cocaine at Bear's Bar, if they so desired they were allowed to use the cocaine in Bear's Bar, and even to sleep there if they so wished. The front room of the structure, in addition to a bar, also contained a pool table and perhaps another game table, on

---

[1]Whether Pruitt sold alcohol out of Bear's Bar is unknown; Pruitt did not have a license to sell alcohol.

top of which were mattresses and fitted sheets where drug customers or Bear Pruitt's "sales staff" would spend the night. Hence, this court's all-too-accurate description of this building as an "opium den."

Immediately to the rear of this front room or bar area was another room that contained a couch, several chairs, another table or two, and a bathroom that contained a toilet and sink, but no shower. This room was connected to the front room through a door which could be closed and bolted. This room also was served by a door that opened directly to the outside; most of the drug customers used this door to enter the building to purchase their drugs, usually from Mr. McCabe. Also in this room was a video monitor that was connected to a number of surveillance cameras placed outside the building.

This room contained what might loosely be described as a kitchenette, although according to Special Agent Williams of the Tennessee Bureau of Investigation it was indescribably nasty.

To the rear of this room was a storage room at the back of the building.

On September 28, 2007, various law enforcement officers, including Special Agent Williams, executed a search warrant at Bear's Bar. Having information that Larry "Bear" Pruitt was armed and dangerous, and would be on the premises at the time the search warrant was executed, the officers took more than the usual precautions when they executed the warrant. Some officers entered the front of the building, whereas others entered the rear. Agent Williams was one of those who entered at the rear or the storage area. The storage area was basically full of junk and debris. He made his way through this storage area, and then entered the next room which contained the video monitor, a couch and a few chairs, kitchenette, and the bathroom. He subsequently

encountered Mr. McCabe and four other individuals.

Mr. McCabe claims that he lived in the middle room, i.e., the one with the monitor, kitchenette, and bathroom. He claims that this area was "separate and distinct from Bear's Bar," and that it was his personal and private residence. He argues that he had a personal expectation of privacy in this particular room or area and, since the search warrant did not specifically describe with particularity this area of the bar, the officers' search of this area was in violation of the Fourth Amendment to the Constitution.

Agent Williams testified that, in the course of interviewing Mr. McCabe during the search, McCabe told him that Bear Pruitt allowed him to live in this room, as well as giving him some food and spending money, in return for selling drugs on Pruitt's behalf. In other words, Bear Pruitt provided room and board to McCabe in return for selling drugs.

McCabe may have lived in this room, but it in no way could reasonably be described as McCabe's *private* residence. Bear Pruitt's other drug dealers, and drug customers, referred to this room as the "smoke room" in which they could use drugs just purchased from Mr. Pruitt. As noted at the outset of this report and recommendation, Mr. Pruitt also provided sleeping accommodations - such as they were - in the building. Drug customers came and went at will through this room, and other drug dealers sold drugs from this area as they pleased. Mr. Pruitt, more so in the capacity of a drug dealer rather than as a landlord, came and went at will.

The applicant for the search warrant for "Bear's Bar" stated an abundance for probable cause to procure a search warrant for this building. However, absolutely nothing could have put the applicant, or the judge who issued the warrant, on any notice that McCabe claimed a portion of this

3

building as a private residence. To any reasonable person with knowledge of the facts, this appeared to be a single building, containing several rooms as most buildings do, all of which were dedicated to the illegal drug trade. Numerous people came and went, constantly. The fact that Mr. McCabe "lived" in a room in return for services rendered to Mr. Pruitt does not in any way lessen the legitimacy of the search of the entire building; the applicant had no way to know beforehand that defendant lived in a part of the structure, or that he so claimed. The Fourth Amendment requires that search warrants particularly describe the place to be searched. This, of course, is what has come to be known as the "particularity requirement." The Supreme Court has interpreted this provision to require only that the description be "such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498 (1925).

In *Maryland v. Garrison*, 480 U.S. 79 (1987), the Baltimore Police suspected Lawrence McWebb of drug trafficking and obtained a warrant authorizing them to search the "premises known as 2036 Park Avenue, third floor apartment." *Id.* at 80. At the time the officers applied for the warrant, they believed that there was only one apartment on the third floor of the building at 2036 Park Avenue. However, when the officers executed the warrant, they discovered that the third floor had been subdivided into *two* separate units. The officers searched the defendant's apartment first, not Webb's, and they discovered illegal drugs. Defendant, of course, was not named in the search warrant, but he was subsequently indicted on the basis of the drugs discovered in his apartment. He filed a motion to suppress based

upon the particularity requirement of the Fourth Amendment.

As in the case before this court, the Supreme Court noted that there was no claim that there was a lack of probable cause to believe that the building contained evidence of illegal drug trafficking. Rather, only with "the benefit of hindsight" was it later learned that the description of the building "was broader than appropriate because it was based on the mistaken belief that there was only one apartment on the third floor . . . ." *Id.,* 85. The Supreme Court phrased the issue thusly: "The question is whether that factual mistake invalidated a warrant that undoubtedly would have been valid if it had reflected a completely accurate understanding of the building's floor plan." *Id.* at 85.

> Plainly, if the officers had known, or even if they should have known, that there were two separate dwelling units on the third floor of 2036 Park Avenue, they would have been obligated to exclude respondent's apartment from the scope of the requested warrant. But we must judge the constitutionality of their conduct in light of the information available to them at the time they acted. Those items of evidence that emerge after the warrant is issued have no bearing on whether or not a warrant was validly issued. Just as the discovery of contraband cannot validate a warrant invalid when issued, so is it equally clear that the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant. The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate. On the basis of that information, we agree with the conclusion of all three Maryland courts that the warrant, insofar as it authorized a search that turned out to be ambiguous in scope, was valid when issued.

*Id.* 85, 86 (footnotes omitted).

In other words, the Supreme Court held that even if the description of the place to be

5

searched was inaccurate, the warrant will be upheld against a particularity challenge if it described the building based upon what the applicant knew or should have known after a reasonable inquiry. *See, United States v. Noel*, 938 F.2d 685 (6th Cir. 1991).

Nothing about this building, or the information known to the applicant, suggested that a discrete part of "Bear's Bar" served as defendant's residence. In point of fact, the entire building, including the middle room wherein defendant purportedly lived, was the situs of drug trafficking, and also utilized for sporadic over-night stays by different people. The applicant had neither actual nor constructive knowledge of defendant's purported residence in Bear's Bar at the time the warrant was issued.

It is respectfully recommended that defendant's motion to suppress be DENIED.[2]

Respectfully submitted,

    s/ Dennis H. Inman
United States Magistrate Judge

---

[2]Any objections to this report and recommendation must be filed within ten (10) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).